UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MD HELICOPTERS, INC., | No. 2:16-cv-2249 TLN AC |
| Plaintiff, | |
| v. | ORDER |
| AEROMETALS, INC., | |
| Defendant. | |

Both parties in this copyright infringement case want the court to enter a protective order to cover confidential materials to be exchanged during discovery. Both parties agree that the protective order should include a provision for the designation of certain discovery materials as "Highly Confidential – Attorneys' Eyes Only." Plaintiff MD Helicopters, Inc. (sometimes referred to as "MDHI"), wants the Attorneys' Eyes Only provision to include its General Counsel, William Black, as a person to whom such materials may be disclosed. Aerometals wants to limit Attorneys' Eyes Only material to outside counsel for plaintiff, which would exclude Mr. Black. Plaintiff has filed the pending motion asking the court to approve its proposed Protective Order, which grants access to such material to Mr. Black. ECF No. 26, 26-1.

For the reasons set forth below, the court will grant plaintiff's motion.

I. THE LAWSUIT

MD Helicopters manufactures helicopters for the civilian and U.S. military markets. It

1

also makes replacement parts for its civilian helicopters.  The U.S. is permitted to use MD Helicopters' intellectual property "to obtain spare and replacement parts for its military helicopters from third party suppliers."  Complaint (ECF No. 1) at 5 ¶ 15.  However, "[u]se of MDHI's proprietary and copyright protected OEM drawings … may only be used by third party suppliers pursuant to the U.S. government license for the production of parts for the military Model 369 (OH-6A) helicopters and its derivatives, and not for the MD 500 Series civilian market."

Defendant Aerometals "supplies aftermarket spare and replacement parts for the military and civilian versions of the MD 500 Series helicopters."  Complaint at 8 ¶ 30.  As such, it has access to MD Helicopters' intellectual property, but is permitted to use it only for making spare parts for military helicopters.  According to the complaint, Aerometals used this information to compete unfairly against MD Helicopters in the market for civilian spare and replacement parts for helicopters.  Plaintiff MD Helicopters sues for copyright infringement and for violations of federal and state unfair competition laws.

## II.   PROCEDURAL BACKGROUND

Plaintiff initially filed a motion for protective order on November 18, 2016.  ECF No. 10.  The parties filed a Joint Statement on December 1, 2016.  ECF No. 19.  However, in the Joint Statement, neither party offered any guidance or legal authority on how to decide the issue.  The renewed motion is now before the court.  See ECF No. 26.

## III.   THE MOTION

### A.  Meet and Confer

The parties have met and conferred, and agree that a protective order is needed.  But they cannot agree on whether plaintiff's General Counsel, William Black, should have access to Attorneys' Eyes Only materials.

### B.  Plaintiff's Proposed Protective Order

Plaintiff has submitted a proposed Protective Order that it says is modeled after the one used the by Northern District of California in intellectual property cases.  It provides that Attorneys' Eyes Only material may be disclosed to "Designated House Counsel of the Receiving

1    Party (1) who has no involvement in competitive decision-making, [and] (2) to whom disclosure

2    is reasonably necessary for this litigation ….." ECF No. 26-1 at 20 ¶ 7.3(b).  That part is modeled

3    after the N.D. Cal. Protective order.  It also separately provides that such material may be

4    disclosed to "William R. Black, MDHI's General Counsel and Counsel of Record."  Id. ¶ 7.3(g).

5         Defendant's sole objection to the proposed protective order is the inclusion of plaintiff's

6    General Counsel in the list of persons authorized to see Attorneys' Eyes Only materials.  See ECF

7    No. 26-1 at 20 ¶ 7.3(g).

8         C.   The Law

9         Rule 26(c) of the Federal Rules of Civil Procedure explicitly authorizes the district court

10   to protect parties from "undue burden or expense" in discovery.  Rule 26(c)(1).  Protection from

11   "undue burdens" includes "protection from misuse of trade secrets by competitors."  Brown Bag

12   Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).  The court may therefore

13   require "that a trade secret or other confidential research, development, or commercial

14   information not be revealed or be revealed only in a specified way."  Rule 26(c)(1)(G); Brown

15   Bag, 960 F.2d at 1469-70 (same, quoting an older version of Rule 26(c)).

16        In determining whether, and how, to the issue the protective order, the court must balance

17   the competing interests here: the risk (to Aerometals) that disclosure to Black could result in

18   "inadvertent disclosure of trade secrets" to MD Helicopters, against the risk (to MD Helicopters)

19   that preventing disclosure of the trade secrets to Black could impair MD Helicopters' ability to

20   prosecute its claims.  Brown Bag, 960 F.2d at 1470 ("[t]hese conflicting interests suggest that a

21   balancing test will best resolve protective order disputes such as the one here").

22        The court is mindful that parties have the right to choose their own counsel to represent

23   them in litigation, and therefore will not lightly interfere with MD Helicopters' choice of its

24   general counsel to represent it, together with outside counsel, in this case.  See Optyl Eyewear

25   Fashion Intern. Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985) (considering

26   the "client's right to choose counsel" in deciding whether disqualification of counsel was

27   warranted).

28   ////

D.  <u>Evidentiary Hearing</u>

The court determined that the declarations submitted with the Joint Statement were insufficient to conduct the required balancing of interests.  Accordingly, an evidentiary hearing was conducted before the undersigned on February 1, 2017.  Having taken the testimony of William Black, the court concludes as follows.

1. <u>General counsel's need for access</u>

Mr. Black's testimony was unconvincing on why he needed access to the Attorneys' Eyes Only materials.  However, this is because Mr. Black does not know what specific materials are at issue.  At this stage in the proceeding, no request for documents has been made and no responsive discovery has been designated for Attorneys' Eyes Only.  Accordingly, there is no way for either side to know whether Mr. Black would need to see these materials.  This factor does not weight in favor of either party.

2. <u>Competitive decision-making</u>

A "crucial factor" in this balancing equation is "whether in-house counsel was involved in 'competitive decisionmaking'; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor."  <u>Brown Bag</u>, 960 F.2d at 1470 (internal quotation marks omitted).[1]  According to his testimony, Mr. Black is the General Counsel and a Vice President of MD Helicopters.[2]

Mr. Black advises MD Helicopters on regulatory compliance, such as export control compliance, anti-corruption compliance, and compliance with acquisition regulations.  He ensures that MD Helicopters' government contracts satisfy these various regulatory requirements.  The

---

[1] The court rejects plaintiff's argument that this "crucial factor" is the *only* factor it must consider.  <u>See</u> ECF No. 26 1 at 3 ¶ II (citing <u>U.S. Steel</u>, 730 F.2d at 1468).  <u>Brown Bag</u> calls for a balancing of all pertinent factors, including the risk of inadvertent disclosure.  <u>See</u> <u>Brown Bag</u>, 960 F.2d at 1470 ("proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel") (emphasis in text).

[2] Defendant points out in its brief that Mr. Black "signed MDHI's 2016 Annual Report and Amended Annual Report as MDHI's 'Secretary.'"  ECF No. 27 at 8; <u>see also</u>, Declaration of Joshua M. Deitz, Exhs. C and D (ECF No. 27-3).  However, Mr. Black was not questioned about his role as Secretary during the evidentiary hearing, so the court does not consider it further.

government agencies he interacts with are the Department of State, Department of Justice, Department of Defense and Department of the Army. Mr. Black has no interaction with the Federal Aviation Authority ("FAA"). Regarding non-government contracts, Mr. Black's work is limited to issues like terms and conditions, indemnity and choice of forum. He does not get involved in business contract terms such as pricing, what is bought or sold, or delivery schedules.

Mr. Black handles labor issues, limited to issues, including litigation, involving the Equal Employment Opportunities Commission ("EEOC"), and unemployment compensation. He oversees litigation, and advises MD Helicopters whether to engage in litigation over, for example, a contract breach. Mr. Black does not advise MD Helicopters on intellectual property issues. That work is done by the Chief Technology Officer and outside counsel. He does not serve on executive committees of MD Helicopters.

In short, nothing about Mr. Black's work indicates that he is engaged in competitive decision-making, and accordingly this factor weighs in favor of including Mr. Black in Attorneys' Eyes Only disclosures.

### 3. Inadvertent disclosure

Mr. Black testified that he is the entire in-house "legal department" for MD Helicopters. He reports directly to the Chief Executive Officer ("CEO") of MD Helicopters, Lynn Tilton, who is also the sole member of the Board of Directors. The absence of other in-house counsel is a factor that the court considers in balancing the risk of inadvertent disclosure to MD Helicopters. See Brown Bag, 960 F.2d at 1471 ("[a]s the *U.S. Steel* court suggested, the magistrate [judge] therefore inquired into counsel's responsibilities as Brown Bag's sole legal advisor and personnel manager") (citing U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed.Cir.1984)).

All of Mr. Black's legal papers are kept in a locked file cabinet in his office. No one has a key to the file cabinet other than one person in "HR" (presumably Human Resources or Human Relations). The CEO has never even been in his office. All of Mr. Black's legal electronic documents are kept on his laptop and a backup device, not on any networked drive or server. No one else has access to his laptop, including "IT" (Information Technology) personnel.

Board of Directors decisions are made by "consent," Ms. Tilton being the sole Board

member, and therefore there are no Board meetings where proprietary confidential information is discussed or could be inadvertently disclosed.  Mr. Black does not participate in meetings involving proprietary technical information, as he would have nothing to contribute, since that is not his area of expertise.

Mr. Black's testimony is convincing that if he were in possession of this confidential material, there was little or no chance of inadvertent disclosure to the business end of MD Helicopters.  This factor accordingly weighs in favor of disclosure to Mr. Black.

### 4. Conflicting duties

Mr. Black's testimony showed that he was aware of his duty to avoid disclosure of Attorneys' Eyes Only information, including to his client, if he is granted access to it.  He testified that this duty would govern even if he were in possession of information he would otherwise have a duty to disclose to his client.  Mr. Black's testimony and demeanor showed that he understood the potential conflicts he could face in these situations, and his willingness to resolve them in favor of non-disclosure of Attorneys' Eyes Only information.  In short, the testimony showed that Mr. Black "could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents." Id. at 1471.  This factor weighs in favor of disclosure to Mr. Black.

## IV.   CONCLUSION

The court concludes that Mr. Black should be granted access to Attorneys' Eyes Only materials under a protective order.  While the court cannot at this stage determine whether denying access to these materials would hinder plaintiff's litigation, the evidentiary hearing leads the court to conclude that there is little or no risk of inadvertent disclosure of confidential material to MD Helicopters.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's renewed Motion for Entry of Protective Order (ECF No. 26), is GRANTED; and

2. The proposed Protective Order – ECF No. 26-1 at 11-27 – is APPROVED and INCORPORATED herein.  This approval is made without prejudice to the ability of

defendant to seek a protective order barring disclosure of particular information if, in light of the evidentiary hearing testimony and the court's findings, it believes that a specific item requested in discovery should not be disclosed to Mr. Black.

IT IS FURTHER ORDERED THAT:

3. Requests to seal documents shall be made by motion before the same judge who will decide the matter related to that request to seal.

4. The designation of documents (including transcripts of testimony) as confidential pursuant to this order does not automatically entitle the parties to file such a document with the court under seal.  Parties are advised that any request to seal documents in this district is governed by E.D. Cal. R. ("Local Rule") 141.  In brief, Local Rule 141 provides that documents may only be sealed by a written order of the court after a specific request to seal has been made.  Local Rule 141(a).  However, a mere request to seal is not enough under the local rules.  In particular, Local Rule 141(b) requires that "[t]he 'Request to Seal Documents' shall set forth *the statutory or other authority for sealing*, the requested duration, the identity, by name or category, of persons to be permitted access to the document, and all relevant information."  Local Rule 141(b) (emphasis added).

5. A request to seal material must normally meet the high threshold of showing that "compelling reasons" support secrecy; however, where the material is, at most, "tangentially related" to the merits of a case, the request to seal may be granted on a showing of "good cause."  Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1096-1102 (9th Cir.), cert. denied, 137 S. Ct. 38 (2016); Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1178-80 (9th Cir. 2006).

6. Nothing in this order shall limit the testimony of parties or non-parties, or the use of certain documents, at any court hearing or trial – such determinations will only be made by the court at the hearing or trial, or upon an appropriate motion.

7. With respect to motions regarding any disputes concerning the stipulated protective order which the parties cannot informally resolve, including any disputes regarding

        inadvertently produced materials under Fed. R. Evid. 502, the parties shall follow the procedures outlined in Local Rule 251.  Absent a showing of good cause, the court will not hear discovery disputes on an *ex parte* basis or on shortened time.

8. The parties may not modify the terms of this Protective Order without the court's approval.  If the parties agree to a potential modification, they shall submit a stipulation and proposed order for the court's consideration.

9. Pursuant to Local Rule 141.1(f), the court will not retain jurisdiction over enforcement of the terms of this Protective Order after the action is terminated.

10. Any provision in the parties' stipulation that is in conflict with anything in this order is hereby DISAPPROVED.

DATED: February 3, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE