UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MD HELICOPTERS, INC., | No. 2:16-cv-02249-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| AEROMETALS, INC., | |
| Defendant. | |

This matter is before the Court on Plaintiff MD Helicopters, Inc.'s ("Plaintiff") Motion for Preliminary Injunction. (ECF No. 51.) Defendant Aerometals, Inc. ("Defendant") opposes the motion. (ECF No. 64.) Plaintiff filed a reply. (ECF No. 74.) Having reviewed the arguments raised by both parties and for the reasons set forth below, the Court hereby DENIES Plaintiff's Motion for Preliminary Injunction (ECF No. 51).

**I.    FACTUAL BACKGROUND**

This case involves the alleged copyright infringement of designs in applications to produce helicopter parts before the Federal Aviation Administration ("FAA"). On April 10, 2017, Plaintiff asserts it learned of 13 pending applications before the FAA for approval to manufacture helicopter replacement parts for the MD 500 Series. (ECF No. 51-1 at 9.) Plaintiff alleges the pending applications contain its copyrighted material including the Technical Manuals and copies of the Original Equipment Manufacturer ("OEM") drawings. (ECF No. 51-1 at 9.)

1

Plaintiff similarly learned of seventeen Part Manufacture Approvals ("PMA") issued by the FAA after Plaintiff filed its complaint in this matter. (ECF No. 51-1 at 9.) Plaintiff seeks a preliminary injunction: (1) requiring Defendant to withdraw all applications pending before the FAA that contain Plaintiff's OEM Drawings, Technical Manuals, or derivative works; (2) prohibiting Defendant from filing any new applications for MD 500 parts which contain Plaintiff's OEM Drawings, Technical Manuals, or derivative works; and (3) prohibiting Defendant from selling any MD 500 products that were approved by the FAA after Plaintiff filed its complaint on September 21, 2016, which was approved based upon Plaintiff's Technical Manuals. (ECF No. 51-1 at 6.)

## II. LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits...so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

A preliminary injunction is an extraordinary remedy. *Winter*, 555 U.S. at 22. Plaintiff must make a showing on all four prongs of the *Winter* test. *Alliance*, 632 F.3d at 1135. Thus, a failure to make a showing on any one factor requires the Court to deny the requested injunction. The Court finds Plaintiff fails to make a showing on irreparable harm and, therefore, declines to address the remaining factors.

There is no presumption of irreparable harm for purposes of injunctive relief in copyright cases. *Flexible Lifeline v. Precision Lift*, No. 10–35987, 2011 WL 3659315, at *9 (9th Cir. Aug. 22, 2011). The party seeking a preliminary injunction must establish "a significant threat of irreparable injury." *Cal. Apartment Ass'n v. San Diego County Apartment Ass'n, Inc.*, No. 11–300, 2011 WL 1002667, at *2 (S.D. Cal. March 18, 2011). Conclusory and speculative statements of economic harm without citation to specific evidence are insufficient to support a finding of irreparable harm. *Su Jean Liu v. J & B Yahng Corp.*, No. 17-cv-00966-H-BGS, 2017 WL 4856875, at *5 (S.D. Cal. July 24, 2017).

Plaintiff's arguments ultimately fall within two categories of irreparable harm: price erosion and reputational harm. (ECF No. 51-1 at 14.) Plaintiff further details its extensive

3

customer support network in support of its argument that it will suffer irreparable harm. (ECF No. 51-1 at 15–16.) Finally, Plaintiff asserts it will lose goodwill and customers when it is forced to reduce its prices to compete with Defendant and then increase its prices once an injunction issues.

As to price erosion, Plaintiff contends the continued availability of Defendant's allegedly infringing products in the marketplace causes Plaintiff to reduce prices and creates price erosion. (ECF No. 51-1 at 17.) Plaintiff supports its argument with the declaration of Scott Bayley, an independent consultant who is a Certified Public Accountant and Certified Fraud Examiner. (ECF No. 51-1 at 17.) Baily declares that he reviewed the price listed for the PMA products currently sold by Defendant to the corresponding price listed by Plaintiff. (Bailey Decl., ECF No. 51-6 ¶ 12.) Based on his review of the price listings, Baily concludes Defendant offers prices lower than Plaintiff on most of the products it manufactures. (ECF No. 51-6 ¶ 14.) Bailey explains that the price erosion arose when Plaintiff then lowered its own prices, but Defendants prices still remained lower despite Defendant maintaining its prices. (ECF No. 51-6 ¶ 15–16.)

Bailey's declaration is unpersuasive for two reasons. First, Bailey relies on price comparisons between Plaintiff and Defendant's products already available in the market. The Bailey declaration does not offer any conclusive evidence that the newly approved products would be offered at lower prices.[1] In essence, Plaintiff asks this Court to look at previous sales of separate products and conclude solely on those sales and price changes that unconnected new products will be priced by Defendant in such a way that will cause price erosion and loss of market share. This sort of speculation contravenes the very requirement that Plaintiff bears the burden to prove "significant threat of irreparable injury." *Cal. Apartment Ass'n*, 2011 WL 1002667, at \*2. Second, the use of price comparisons demonstrates it is possible to calculate monetary damages in this case. Furthermore, Plaintiff fails to address why the erosion could not later be compensated through monetary damages at the conclusion of the lawsuit. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective

---

[1] The Court granted Plaintiff the right to file redacted versions of the Bailey Declaration as well as file the attachments under seal. (ECF No. 53.) To protect the sanctity of the order to seal, the Court can only generally say some of Defendants prices were not sold at a lower price.

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

As to Plaintiff's reputational arguments, Plaintiff detailed a long list of the available customer service provided by Plaintiff and Defendant's lack of service centers. Plaintiff then cites *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009), for the proposition that infringing products cause irreparable harm when the business is centered around promises of quality and customer support. However, the court in *Psystar* dealt with a permanent injunction following summary judgment in favor of Apple and enjoined acts of infringement which underlined the reason for filing the complaint. *Id.* Here, Plaintiff seeks to prohibit new products from entering the market with only speculative evidence that Defendant's new products will harm its market shares or reputation. Plaintiff fails to show how *Psystar* applies to new and separate products in a preliminary injunction and thus its use is unpersuasive. Furthermore, Plaintiff fails to show how an infringing use of its copyrighted drawings in FAA applications leads to ultimate harm of the availability of customer service. Plaintiff instead focuses on the products themselves, only one portion of the injunction sought.

Finally, Plaintiffs argument as to loss of good will and loss of customers is logically flawed. Plaintiff asserts "[t]he loss of goodwill is difficult to quantify, but is a harm [Plaintiff] will likely incur as a result of attempting to restore the actual MD 500 parts prices to the potential price." (ECF No. 51-1 at 17.) That Plaintiff's argument is a contradiction is obvious. In order to receive an injunction, Plaintiff must demonstrate "that [it] is likely to suffer irreparable harm in the *absence* of preliminary relief." *Winters*, 555 U.S. at 20 (emphasis added). Essentially, Plaintiff asserts that as a result of the competition with Defendant — caused by Defendant's alleged infringement of Plaintiff's copyright — it was forced to reduce its prices and that when the preliminary injunction is issued it will lose goodwill and customers when Plaintiff attempts to correct the price erosion by increasing prices. This arises out of the very nature of the suit itself and cannot be avoided. Thus, Plaintiff's loss of goodwill and customers is caused by the *issuance* of an injunction not the *absence* of one. Accordingly, Plaintiff's argument fails to prove irreparable harm if an injunction does not issue.

5

As detailed above, Plaintiff fails to demonstrate that it will suffer irreparable harm in the absence of a preliminary injunction. As Plaintiff must make a showing on all four prongs of the *Winters* test, Plaintiff has thus failed to establish it is entitled to a preliminary injunction.

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction (ECF No. 51) is hereby DENIED.

IT IS SO ORDERED.

Dated: 1/18/2018

Troy L. Nunley
United States District Judge