UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MD HELICOPTERS, INC., | No. 2:16-cv-02249-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| AEROMETALS, INC., | |
| Defendant. | |

This matter is before the Court on Plaintiff MD Helicopters, Inc.'s ("Plaintiff") Motion for Leave to Amend the Complaint. (ECF No. 102.) Defendant Aerometals, Inc. ("Defendant") has filed an opposition (ECF No. 105), and Plaintiff has filed a reply (ECF No. 109). For the reasons set forth herein, Plaintiff's Motion is GRANTED. (ECF No. 102.)

///
///
///
///
///
///
///
///

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a helicopter manufacturer seeking damages and injunctive relief based on Defendant's alleged copyright infringement of certain helicopter parts. One of Plaintiff's most successful product lines is a family of helicopters based on the single engine MD 500 model, which includes civilian and military helicopters. (ECF No. 1 at ¶ 9.) The civilian line is called the "MD 500 Series." (*Id.* at ¶ 10.) Plaintiff alleges Defendant used its Original Equipment Manufacturer drawings, in which it claims intellectual property rights, to compete in the civilian market for MD 500 Series spare and replacement parts.[1] (*Id.* at ¶ 38.)

On January 3, 2019, Plaintiff filed the instant Motion for Leave to Amend the Complaint, seeking to add factual allegations relating to Plaintiff's copyright registrations and new claims for conversion, federal trade secret misappropriation, California trade secret misappropriation, inducement to breach of contract, and a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (*See* ECF No. 102.) Defendant filed an opposition on January 24, 2019 (ECF No. 105), and Plaintiff filed a reply on January 31, 2019 (ECF No. 109).

## II. STANDARD OF LAW

Granting or denying leave to amend a complaint rests within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under Rule 15(a)(2), a party may amend its pleading only with the opposing party's written consent or the Court's leave. However, "[t]he court should freely give leave [to amend] when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Whether leave to amend should be granted is generally determined by considering the following factors: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by allowing amendment; and (5) futility of amendment. *See Foman*, 371 U.S. at

---

[1] The Court need not recount all background facts of the instant case here, as they are set forth fully in the Court's November 30, 2018 Order denying Defendant's Motion to Dismiss and Special Motion to Strike. (ECF No. 95.)

182; *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)). Of these considerations, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original). "[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III. ANALYSIS

Plaintiff argues it seeks leave to amend "in good faith and without undue delay" after discovering new evidence to support additional claims against Defendant and Rex Kamphefner ("Kamphefner"), Defendant's sole owner and president. (ECF No. 102 at 6.) Plaintiff maintains there is no prejudice to either Defendant or Kamphefner as the Court has not issued a Scheduling Order "with deadlines to amend the pleadings and complete discovery," which means Defendant "has ample time to seek discovery in relation to the new allegations." (*Id.*)

In opposition, Defendant argues granting leave to amend would be futile, Plaintiff's "extreme delay" in seeking leave to amend is unreasonable, Defendant is prejudiced by the proposed amendment, and Plaintiff is acting in bad faith. (*See* ECF No. 105.) The Court will address each of the *Foman* factors Defendant raises.

#### A. Futility

A proposed amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *implied overruling recog. on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). However, denial of leave to amend on this ground is rare. *See Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003). Ordinarily, "courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Id.*

Defendant argues amendment is futile because Plaintiff cannot state a claim for misappropriation of trade secrets, conversion, violation of the RICO Act, or inducement to breach of contract. (ECF No. 105 at 6–16.) The Court will address each claim in turn.

*i.     Misappropriation of Trade Secrets Claim*

Defendant argues Plaintiff fails to allege its intellectual property has been continuously subject to reasonable efforts to maintain its secrecy and Plaintiff is time-barred from bringing trade secrets claims. (ECF No. 105 at 13–15.)

*a) Reasonable Efforts to Maintain Secrecy*

Defendant argues Plaintiff fails to state a misappropriation of trade secrets claim under both the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426–3426.11, because Plaintiff specifically fails to allege the Hughes Reports (the purported documents containing the trade secrets) "have been continuously subject to reasonable efforts to maintain their secrecy throughout their existence." (ECF No. 105 at 13 (emphasis in original omitted).)

"Both the DTSA and the CUTSA define a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner." *Rockwell Collins, Inc. v. Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017) (citing 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d)).

Here, Plaintiff pleads in the FAC the following:

> Among other things, [Plaintiff] stores hard copies in a restricted facility behind a locked gate and monitored by a guard twenty-four hours a day, limits access to certain employees with a business need for them, stores electronic copies in a secure location on its server where only a limited number of employees with need have access, requires a username and password for those employees to access electronic copies, reminds MDHI employees of their responsibilities of confidentiality when logging into the MDHI network, implements employment policies that require confidentiality, requires employees to sign Employment Agreements that remind employees of a duty to keep MDHI's materials confidential. Visitors to MDHI's facility are required to sign in on a visitor log, must wear a visitor badge, and are required to be escorted by an MDHI employee. MDHI's Trade Secrets are not disclosed [publicly] or to MDHI's third party suppliers.

(ECF No. 102 at ¶ 82.)  The Court finds these detailed steps to protect the secrecy of the Hughes Reports is sufficient to show Plaintiff has taken "reasonable measures of secrecy." *See Rockwell Collins, Inc.*, 2017 WL 5502775, at *2.  Additionally, Plaintiff can amend its FAC to add further factual information about how it and its predecessors have "at all times" undertaken efforts to maintain the secrecy of the Hughes Reports.

### b) *Statute of Limitations*

Defendant further argues Plaintiff's claims under both the DTSA and CUTSA are time-barred, as "[b]oth statutes provide a three-year limitations period for misappropriation.'" (ECF No. 105 at 14 (citing 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6).)  Defendant maintains Plaintiff's "single claim of continuing misappropriation" accrued "decades ago" and is therefore time-barred, as Plaintiff alleges the Hughes Reports were "improperly acquired or retained" in 1984 and that Defendant "improperly submitted its trade secret materials to the FAA . . . dating back to the late 1990s and early 2000s." (*Id.* at 14–15 (citing *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 223 (2002).)  In response, Plaintiff asserts it did not have "sufficient information" to amend its Complaint until the fall of 2017, as "Defendant's infringing activities were not established until after several depositions" and review of documents produced in discovery on May 15, 2017.  (ECF No. 109 at 5–6.)

Trade secrets claims under both federal and California state law have a three-year statute of limitations.  18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.  A cause of action generally "accrues at the time when the cause of action is complete with all of its elements." *HighMark Digital Inc. v. Casablanca Design Centers, Inc.*, No. CV 18-06105 SJO (JPR), 2020 WL 2114940, at *12 (C.D. Cal. Mar. 26, 2020) (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (internal quotations omitted).  The limitations period begins "[w]hen there is reason to suspect that a trade secret has been misappropriated, and a reasonable investigation would produce facts sufficient to confirm this suspicion," regardless of whether plaintiff has conducted such an investigation. *Id.* (citing *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1003 (S.D. Cal. 2012)).

///

1    "However, under the 'discovery rule,' the accrual is postponed until the plaintiff
2    discovers, or has reason to discover, the cause of action." *Id.* (citing *Fox*, 35 Cal. 4th at 807).  "A
3    plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a
4    factual basis for its elements." *Id.* (internal quotations omitted).  Invocation of the discovery rule
5    to delay the accrual of the cause of action requires a plaintiff to show "(1) the time and manner of
6    discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.*
7    (citing *Fox*, 35 Cal. 4th at 808).  When the facts presented by the parties can be interpreted in
8    more than one way, the question of when the limitations period begins to accrue is a question of
9    fact for the jury. *Id.* (citing *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d, 1204, 1224 (E.D.
10   Cal. 2010)).

11          Here, Plaintiff and Defendant disagree as to when the claim accrued and whether Plaintiff
12   can invoke the discovery rule.  Defendant notes Plaintiff "has been aware of [Defendant] as a
13   competitor and suspected [Defendant] of copying its designs" since 2004 and Plaintiff has even
14   admitted it "became aware, as early as 2015, that [D]efendant might be violating its intellectual
15   property rights based on material published on [Defendant's] website." (ECF No. 105 at 16
16   (citing ECF No. 87 at 6).)  Defendant also asserts Plaintiff cannot invoke the discovery rule to
17   postpone accrual of the claim because Plaintiff "has not alleged the time or manner of discovery
18   [n]or shown that it engaged in any diligence" to have made earlier discovery, as even a "suspicion
19   of wrongdoing will trigger the statute of limitations." (*Id.* at 15.)  On the other hand, Plaintiff
20   claims that it was not until 2017 — after discovery and depositions — that it discovered the
21   relevant facts supporting these claims. (ECF No. 109 at 5–6.)  Plaintiff maintains the
22   circumstances in 2004 were such that it "suspected [Defendant] of counterfeiting its parts, not that
23   [Defendant] had the Hughes Reports," and the fact that Defendant displayed portions of
24   Plaintiff's Technical Manuals on its website in 2015 "provides no indication that [Defendant] had
25   the Hughes Reports." (*Id.*)  Plaintiff contends it has alleged sufficient facts to invoke the
26   discovery rule to delay the limitations period because "[t]he Hughes Reports were submitted
27   confidentially to the FAA and protected from public disclosure." (*Id.*)
28   / / /

1    Based on the parties' arguments, it remains a question of fact whether Plaintiff could have
2    had a "reason to suspect that a trade secret [had] been misappropriated" in 2015, such that "a
3    reasonable investigation would produce facts sufficient to confirm this suspicion." *HighMark*
4    *Digital Inc.*, 2020 WL 2114940, at *12. It also remains a question of fact whether Plaintiff was
5    unable "to have made earlier discovery despite reasonable diligence," thereby invoking the
6    discovery rule. *Id.* At the pleading stage, Plaintiff's factual allegations are taken as true and
7    given the benefit of all reasonable inferences. *Cf. Cruz v. Beto*, 405 U.S. 319, 322 (1972).
8    Applying this standard, the Court cannot say Plaintiff's claim is time-barred, as Plaintiff
9    adequately pleaded that it could not have discovered the facts relevant to this claim until 2017 and
10   could possibly allege additional facts to bolster this claim.

11   Accordingly, the Court does not find the addition of Plaintiff's federal and state
12   misappropriation of trade secrets claims in the FAC to be futile.

13                                                    ii.    *Conversion Claim*

14   Defendant argues the CUTSA supersedes Plaintiff's conversion claim because the
15   conversion claim "is based on the same 'nucleus of facts' as the trade secrets claims." (*See* ECF
16   No. 105 at 17 (citing *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171
17   Cal. App. 4th 939, 958 (2009).) Defendant asserts in the alternative that this claim is barred by a
18   "three-year limitations period for the same reasons that the trade secrets claims are untimely."
19   (*Id.* (citing *Strasberg v. Odyssey Group*, 51 Cal. App. 4th 906, 915 (1996).)

20   Courts have found the CUTSA supersedes common law claims for misappropriation of
21   trade secrets. *See K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 954; *Acculmage Diagnostics Corp.*
22   *v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953–54 (N.D. Cal. Apr. 18, 2003); *cf. Cadence Design*
23   *Systems, Inc.*, 29 Cal. 4th at 224. The CUTSA specifically states that preemption "does not affect
24   (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other
25   civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies,
26   whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).
27   However, claims "based entirely on the same factual allegations that form the basis of the trade
28   secrets claim" can be preempted. *See Callaway Golf Co. v. Dunlop Slazenger Group Americas,*

*Inc.*, 318 F. Supp. 2d 216, 220 (D. Del. 2004) (applying California law to find the CUTSA preempted conversion, unjust enrichment, and negligence cross-claims); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (finding claims for unfair competition preempted "since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.").

Here, the Court finds Plaintiff has pleaded sufficiently different factual allegations in its conversion claim that is not based upon misappropriation of trade secrets. In the trade secrets claims, Plaintiff pleads that it "owns and possesses information, documents, and data containing valuable trade secrets regarding certain engineering reports relating to components and assemblies of the MD 500 series helicopter[,] described above as [Plaintiff's] Trade Secrets." (ECF No. 102 at ¶¶ 210, 230.) Plaintiff alleges Kamphefner and Defendant have misappropriated its "Trade Secret information . . . by using [Plaintiff's] Trade Secrets in its PMA and STC applications[2] for MD 500 parts," and continuing to use them for Kamphefner's and Defendant's own economic benefit. (*Id.* at ¶¶ 217, 235.) In contrast, in the conversion claim, Plaintiff specifically references its ownership of and property interest in the Type Certificate H3WE, which "includes all drawings, specifications, engineering reports and data necessary to demonstrate compliance with FAA certification requirements." (*Id.* at ¶ 193–94, 197.) Plaintiff alleges Defendant has "copied and utilized materials from [Type Certificate] H3WE . . . and submitted these materials to the FAA in the form of PMA and STC applications" without authorization, thereby being "spared the delay and expense [Defendant] would have incurred in obtaining FAA approvals by reverse engineering and without the use of [Plaintiff's] materials." (*Id.* at ¶ 198, 200.) Specific reference to the Type Certificate H3WE in the conversion claim shows it is not "based entirely on the same factual allegations that form the basis of the trade secrets claim" — as such, it is not preempted by the CUTSA. *See Callaway Golf Co., Inc.*, 318 F. Supp. 2d at 220. With respect to the parties' arguments regarding the statute of limitations and

---

[2] As Plaintiff notes in its FAC, a Parts Manufacturer Approval ("PMA") and Supplemental Type Certificate ("STC") are methods by which approval can be obtained from the FAA to manufacture spare and replacement helicopter parts. (ECF No. 102 at ¶¶ 40, 49.)

the discovery rule, the Court's conclusion above is applicable here as well.  Accordingly, the Court does not find the addition of Plaintiff's conversion claim in the FAC to be futile.

### iii. RICO Claim

The Ninth Circuit has articulated the elements of a RICO claim as "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activities (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Defendant argues Plaintiff fails to allege a legally sufficient "predicate act," Plaintiff fails to allege "concrete financial loss," and Plaintiff is time-barred from bringing a RICO claim.  (ECF No. 105 at 18–21.)  The Court will address each of Defendant's arguments in turn.

#### a) Predicate Acts

Defendant argues Plaintiff fails to state a legally sufficient "predicate act" because its "allegations do not rise to the level of counterfeiting or piracy."  (ECF No. 105 at 18.)  In response, Plaintiff notes Defendant does not challenge its allegations of mail fraud as predicate acts under RICO and its claim should stand.  (ECF No. 109 at 9.)  Plaintiff also contends it has sufficiently pleaded criminal copyright infringement as it "alleges egregious criminal copyright infringement based on [Defendant's] wholesale copying of thousands of documents over many years resulting in millions of dollars of damages," suggesting piracy and counterfeiting.  (*Id.* at 9–10 (citing ECF No. 102 at ¶¶ 266–67).)

The Ninth Circuit has held Rule 9(b)'s heightened pleading requirements apply to RICO actions alleging predicate acts of fraud.  *Tate v. PG & E Corp.*, 94 F. App'x 529 (9th Cir. 2004) (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)); *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1988) (holding RICO claim inadequately pleaded where neither time, place, nor nature of the violation was stated with particularity); *Odom v. Microsoft Corp.*, 486 F.3d 541, 547–48 (9th Cir. 2007) (en banc).  Here, Plaintiff alleges "[Defendant] or its agents used the U.S. mail to transmit fraudulent materials to the FAA as part of a scheme or artifice to obtain FAA approval to manufacture and

sell MD 500 helicopter parts by submitting [Plaintiff's] proprietary, Trade Secret, and copyrighted materials to the FAA as its own." (ECF No. 102 at ¶ 270). Plaintiff further alleges the following:

> In furtherance of its scheme or artifice, at Kamphefner's direction, [Defendant] or its agents used the mail from [Defendant's] location in Northern California or a location in Bellevue, Washington to submit [Plaintiff's] materials to the FAA either in Los Angeles or Seattle fraudulently claiming [Plaintiff's] materials were proprietary to [Defendant] on the following occasions . . .

(*Id.* at ¶ 272.) Plaintiff proceeds to list with specificity the dates and names of Defendant's employees who participated in sending Plaintiff's materials to the FAA. (*Id.* at ¶ 272(a)–(ooo).) In these allegations, Plaintiff provides the time (various dates from 1997 to 2017), the place (at Defendant's place of business), and the nature of the violation (fraudulently claiming Plaintiff's materials were its own and representing them as such to the FAA). The Court thus finds that because Plaintiff plausibly alleges predicate acts of mail fraud with sufficient particularity to comply with Rule 9(b), the Court cannot say the claim is futile.

*b) Injury to Plaintiff*

Defendant further argues Plaintiff lacks standing to allege a RICO claim as its loss of revenue due to decreased part sales, price erosion, and damage reputation do not constitute "concrete financial loss." (ECF No. 105 at 18–20.)

The Ninth Circuit has held that "[t]o demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002). A RICO plaintiff only has standing "if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation" and "defendant's violation . . . must be the proximate cause of plaintiff's injury." *Id.* at 1087 (citing *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 279 (1992)).

Here, Plaintiff alleges Defendant's racketeering activities "through criminal theft of trade secrets, criminal copyright infringement, and mail fraud has injured [Plaintiff's] business by making sales of MD 500 parts that otherwise would have been made by [Plaintiff]." (ECF No.

10

102 at ¶ 276.) Plaintiff further alleges it has been injured through "price erosion for MD 500 parts, the loss of customers, and the impairment of [Plaintiff's] goodwill" and that "[e]ach sale of an MD 500 helicopter part made by [Defendant] is a sale that would have been made by [Plaintiff]." (*Id.* at ¶¶ 275–76.) Plaintiff clearly alleges Defendant's violation is the proximate cause of its injury. Additionally, while calculation of the exact lost revenue due to decreased sales might be a question of fact that is not decided at this stage of the proceedings, it is unquestionable that Plaintiff's alleged damages from lost sales do not constitute "mere injury to a valuable intangible property interest." *See Chaset*, 300 F.3d at 1086–87. Accordingly, the Court finds Plaintiff has adequately pleaded injury to have standing to bring a RICO claim.

c) *Statute of Limitations*

Lastly, Defendant argues Plaintiff is time-barred from bringing this claim because "the first three 'predicate acts' required to establish a pattern of 'racketeering activity' occurred . . . in 1997" and Plaintiff "actually conducted an investigation in 2004." (ECF No. 105 at 20–21 (emphasis in original omitted).) Plaintiff does not address Defendant's argument. (*See* ECF No. 109.)

All civil RICO claims have a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987). The Ninth Circuit follows the "injury discovery rule," which provides that a civil RICO claim accrues "when a plaintiff knows or should know of the injury that underlies his cause of action." *Grimmett*, 75 F.3d at 510, 512. The Ninth Circuit has also adopted the "separate accrual rule," under which "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years ago." *Id.* at 510–11; *see also State Farm Mut. Auto Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir. 1987).

Here, Plaintiff alleges numerous specific instances of mail fraud that arguably fall within the statute of limitations under the separate accrual rule, the latest of which occurred on February 22, 2017. (*See* ECF No. 102 at ¶ 272.) As four years have not passed from that date to January 3, 2019, the date at which Plaintiff filed the instant Motion to Amend, the Court cannot definitively find Plaintiff's claim to be time-barred.

Accordingly, the Court does not find the addition of Plaintiff's RICO claim in the FAC to be futile.

### iv. Inducement to Breach of Contract Claim

Defendant argues Plaintiff's inducement to breach of contract claim is inadequately pleaded because it does not specifically name the Authorized Service Centers ("ASCs"), Authorized Distributors ("ADs"), or third party suppliers "that were supposedly induced to breach their contract." (ECF No. 105 at 21.) Defendant contends Plaintiff's "threadbare allegations do not raise a plausible inference that [Defendant's] conduct, in publicly offering for sale of FAA-approved aircraft parts, was *intentionally designed* to induce a breach of agreements between third parties." (*Id.* at 22.) In response, Plaintiff asserts that it identifies "fifty [ASCs] and [ADs]," as well as "the specific contracts that were breached — the ASC contracts, the AD contracts, and the supplier agreements." (ECF No. 109 at 12.) Plaintiff also maintains it could amend the FAC to specifically name an ASC. (*Id.*)

To plead inducement to breach a contract claim, a plaintiff must prove: (1) plaintiff "had a valid and existing contract [with a third party];" (2) "defendant had knowledge of the contract and intended to induce its breach;" (3) "the contract was in fact breached by the contracting party;" (4) "the breach was caused by . . . defendant's unjustified or wrongful conduct;" and (5) "damages [were suffered as a result]." *Shamblin v. Berge*, 166 Cal. App. 3d 118, 122–23 (1985) (citing *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 995 (1977)); *cf. Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 1129 (1990).

Here, Plaintiff alleges it "has valid written contracts with its [ASCs] and [ADs] that require, among other things, that they exclusively sell only [Plaintiff's] OEM MD 500 parts to their customers." (ECF No. 102 at ¶ 241.) Plaintiff further alleges Defendant knew of Plaintiff's "contracts with its ASCs and ADs," Defendant "intended" to cause Plaintiff's ASCs and ADs to breach their contracts with Plaintiffs "by its intentional acts of marketing and selling its MD 500 PMA parts to them for resale," Defendant's conduct caused Plaintiff's ASCs and ADs "to breach their contracts with [Plaintiff] by selling [Defendant's] MD 500 PMA parts to their customers," and Plaintiff was harmed from this breach "by [losing] sales for MD 500 parts." (*Id.* at ¶¶ 242–

45.) The Court finds Plaintiff has sufficiently pleaded the existence of its contracts with its ASCs and ADs, but notes Plaintiff could provide additional factual allegations regarding the element of intent. Nevertheless, the Court cannot say that this claim "could not possibly be cured by the allegation of other facts." *Watison*, 668 F.3d at 1117.

In the alternative, Defendant argues this claim is time-barred — Plaintiff contractually prohibited the sale of PMA parts in 2010, and Defendant's offer and sale of PMA parts constituted a "wrongful act" after that time. (ECF No. 105 at 22.) Plaintiff does not address this argument. (*See* ECF No. 109.) This tort claim is subject to the two-year statute of limitations in Cal. Civ. Proc. Code § 339(1). *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974); *Kenworthy v. Brown*, 248 Cal. App. 2d 298, 301 (1967); *Kiang v. Strycula*, 231 Cal. App. 2d 809, 811–12 (1965). However, Plaintiff itself has not alleged the prohibition of the sale of PMA parts in 2010 in its FAC, which means Defendant cannot rely on this date as there is nothing on the face of the FAC indicating a statute of limitations issue. Further, the Court cannot say this claim "could not possibly be cured by the allegation of other facts" as to when the claim began to accrue. *Watison*, 668 F.3d at 1117.

Accordingly, the Court does not find the addition of Plaintiff's inducement to breach of contract claim in the FAC to be futile. Based on the foregoing, the Court finds the futility factor weighs in favor of granting leave to amend.

        B.     Undue Delay

Plaintiff argues it should be granted leave to amend because, since filing its Complaint, it has discovered evidence regarding Defendant and Kamphefner that supports additional claims. (ECF No. 102 at 6; ECF No. 109 at 11.) Plaintiff notes this is its first request to amend, which is "well within the liberal standard for freely granting leave to amend the pleadings." (*Id.*) In opposition, Defendant asserts Plaintiff "was clearly aware of all the facts it needed to raise each of its new theories" when the lawsuit began in 2016. (ECF No. 105 at 23.) Defendant notes Plaintiff also "waited far too long after it received the 'evidence' in question," as Plaintiff noted in its Motion for Preliminary Injunction that it "found evidence of criminal infringement on April 10, 2017 when [Defendant] produced PMA applications in discovery." (*Id.* (citing ECF No. 51-1

at 5).) Defendant contends its production in April 2017 also showed the Hughes Reports were attached to certain PMA applications. (*Id.* at 24.) Both of these facts mean Plaintiff waited more than twenty months to bring the instant motion. (*Id.*)

Relevant to evaluating undue delay, the Court may consider whether Plaintiff "knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). However, "undue delay by itself . . . is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). The Court finds Defendant's argument of Plaintiff waiting almost twenty months before bringing these new claims persuasive. Further, as Defendant notes, Plaintiff "threatened a trade secrets claim" in 2015 and "had enough information at that time to raise its conversion claim because it accused [Defendant] of possessing and using materials" that comprise the Type Certificate H3WE, "the supposedly converted property." (ECF No. 105 at 23 (citing ECF No. 64-4).) Defendant also points out "[t]he only material distinction" between the original civil copyright infringement claims and the RICO claim Plaintiff seeks to add now is the element of "willfulness," but Plaintiff "has alleged 'willful infringement' since the inception of this lawsuit." (*Id.* (citing ECF No. 1 at ¶¶ 55, 59, 65).) This strongly suggests Plaintiff "knew or should have known the facts and theories" raised by its new claims at the time of its initial Complaint. *Jackson*, 902 F.2d at 1388. Accordingly, the Court finds the undue delay factor weighs in favor of Defendant.

### C. Prejudice

Plaintiff argues there is no prejudice to either Defendant or Kamphefner, as "[t]he pleadings are not yet complete as [Plaintiff] has not answered [Defendant's] counterclaims" and "the Court has yet to issue a Rule 16 Scheduling Order with deadlines to amend the pleadings and complete discovery." (ECF No. 102 at 6; *see also* ECF No. 109 at 11–12.) Plaintiff notes "[t]he underlying facts of the causes of action against [Defendant] have not substantially changed." (*Id.*) In opposition, Defendant argues it is prejudiced by the proposed amendment, as it "would need to take substantial discovery on a range of new issues spanning many decades in order to adequately defend itself." (ECF No. 105 at 24.) Specifically, Defendant notes the trade secrets

claims would "necessitate discovery" regarding the "reasonable efforts" taken by Plaintiff and its predecessors "to preserve the secrecy of the Hughes Reports since the 1960s when they were created," as well as "the widespread distribution of [Plaintiff's] purported 'trade secrets' within the helicopter industry." (*Id.*)  Defendants argue the RICO and inducement to breach of contract claims will also require new discovery.  (*Id.* at 25.)

Prejudice is the factor that weighs most heavily in the Court's analysis of whether to grant leave to amend. *Eminence Capital, LLC*, 316 F.3d at 1052.  "Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-cv-01086-AWI, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011) (citation omitted).  Courts have found proposed amendments to be prejudicial when leave to amend is requested as a relevant discovery deadline nears or has already passed. *See*, *e.g.*, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  The Ninth Circuit has found substantial prejudice to a defendant where the claims sought to be added "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *SAES Getters S.p.A v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1094 (S.D. Cal. Aug. 15, 2002).

Here, the case law Defendant cites is not analogous to this case.  In *Kaplan v. Rose*, the district court found the defendant would suffer prejudice if it granted plaintiff's motion to amend the complaint because "[t]rial was only two months away, and discovery was completed."  49 F.3d 1363, 1370 (9th Cir. 1994).  In *Jackson v. Bank of Hawaii*, the district court determined there would be undue prejudice to appellees if appellants were allowed to file an amended complaint as it "would require appellees to relitigate a portion of their state court action with their insurer on the different theories raised by the [new] claims." 902 F.2d at 1388.  In *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, plaintiffs' counsel admitted the delay in bringing the new cause of action was "a tactical choice," and the district court found the motion to amend "was brought to avoid the possibility of an adverse summary judgment ruling." 781 F.2d 1393, 1398–99 (9th Cir. 1986).  The Court acknowledges its backlog is an obstacle in this litigation, as

15

1   Plaintiff's motion has been pending for more than two years.  *See* Lawrence J. O'Neill, *An*

2   *Important Letter to Congress from the Judges of Eastern District of California Regarding Our*

3   *Caseload Crisis*, United States District Court, Eastern District of California (Jun. 19, 2018),

4   http://www.caed.uscourts.gov/caednew/index.cfm/news/important-letter-re-caseload-crisis/.  As

5   such, this Court has yet to issue a Scheduling Order containing deadlines, and Plaintiff is correct

6   in its assertion that this litigation is still at an early stage procedurally.  There is nothing to

7   suggest the new claims would require any re-litigation of old claims.  Nor is there any evidence to

8   indicate Plaintiff has brought the instant motion as a tactical choice or to avoid a ruling in

9   Defendant's favor.  On balance, the Court finds this factor tips in favor of allowing Plaintiff to

10  amend.

            D.      Bad Faith

12  Plaintiff argues there is no bad faith as the "[i]nformation discovered during discovery

13  supports the additional claim[s] against [Defendant] and Kamphefner," citing case law in which

14  no bad faith was found "where plaintiff made 'reasonable inquiry' into facts supporting new

15  claim, introduced relevant evidence, and 'has never mischaracterized the nature of the lawsuit."

16  (ECF No. 102 at 6 (citing *Coilcraft Inc. v. Inductor Warehouse*, No. 98 C 140, 200 WL 555501,

17  at *3 (N.D. Ill. May 4, 2000)).)  In opposition, Defendant asserts Plaintiff is acting in bad faith

18  because "it does not own the rights to a significant portion of the intellectual property it seeks to

19  enforce."  (ECF No. 105 at 25–26.)

20  The Ninth Circuit has clarified that bad faith "is not simply bad judgment or negligence,

21  but rather it implies the conscious doing of a wrong because of dishonest purpose or moral

22  obliquity" and "contemplates a state of mind affirmatively operating with furtive design or ill

23  will."  *U.S. v. Manchester Farming Partnership*, 315 F.3d 1176, 1185 (9th Cir. 2003) (quoting

24  *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)); *see also Fresno Unified Sch.*

25  *Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013) (bad faith includes

26  seeking to amend to prolong litigation by adding baseless legal theories or frivolous amendments,

27  to harass the opposing party, or to assert false allegations as to constitute a fraud and willful

28  imposition on the dignity of the court).

Here, the Court finds Plaintiff's motion to amend was not filed to add baseless legal theories or frivolous amendments, as each additional claim contains substantial supporting factual allegations.  (*See* ECF No. 102.)  Further, as the underlying facts of Defendant's conduct remains unchanged by Plaintiff's additional allegations, the Court cannot conclude the motion was filed to harass Defendant or with "dishonest purpose or moral obliquity."  *See Manchester Farming Partnership*, 315 F.3d at 1185.  Based on the foregoing, the Court finds the bad faith factor weighs in Plaintiff's favor.

In sum, the Court finds the *Foman* factors weigh in favor of granting leave to amend.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint (ECF No. 102) is GRANTED.  Plaintiff shall file its First Amended Complaint not later than fourteen (14) days after the electronic filing date of this Order.  Defendant shall file an answer to the First Amended Complaint not later than thirty (30) days after the electronic filing date of the First Amended Complaint.  The Court also DENIES as moot Plaintiff's Motion to Strike Counterclaim and Affirmative Defense and Motion to Dismiss Counterclaims (ECF No. 103), Defendant's Motion for Leave to File Amended Answer (ECF No. 167), and Defendant's Motion for Leave to File Second Amended Answer (ECF No. 200).

IT IS SO ORDERED.

DATED:  March 15, 2021

Troy L. Nunley
United States District Judge