UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MD HELICOPTERS, INC., | No. 2:16-cv-02249-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| AEROMETALS, INC., | |
| Defendant. | |

This matter is before the Court on Defendant Aerometals, Inc.'s ("Defendant") Motion to Disqualify Gibson, Dunn & Crutcher ("Gibson Dunn") as Plaintiff's Counsel. (ECF No. 177.) Plaintiff MD Helicopters, Inc. ("Plaintiff") has filed an opposition (ECF No. 183), and Defendant has filed a reply (ECF No. 199). For the reasons set forth below, Defendant's Motion is GRANTED. (ECF No. 177.)

///
///
///
///
///
///
///

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

From 2002 to 2005, Gibson Dunn represented Defendant extensively in four matters related to the instant case. (ECF No. 177-1 at 6.) The matters involved approximately 12 Gibson Dunn attorneys and 10 other timekeepers, and Gibson Dunn billed Defendant over $1.1 million in fees and costs. (*Id.* at 6–7.)

First, in the early 2000s, Defendant "entered into three contracts with the Army Special Operations Command ("SOCOM") to supply spare parts for the MD 500 Series helicopter and one of its military variants, the Mission Enhanced Little Bird ("MELB")." (*Id.* at 7.) An investigation by the Army's Criminal Investigative Division ("CID") into an allegation that Defendant was supplying counterfeit parts led the Army to terminate the contracts with Defendant for default on February 5, 2002. (*Id.*) The Army alleged Defendant did not satisfy a contractual requirement that spare parts be certified by the Federal Aviation Administration ("FAA") or Aircraft Manufacturer approved. (*Id.*) The Army maintained Defendant's spare parts manufactured based on the Original Equipment Manufacturer ("OEM") drawings failed to meet the definition of "Aircraft Manufacturer approved" if there was no "contemporaneous, affirmative act" of approval from Plaintiff. (*Id.* (quotations omitted).) Relatedly, Plaintiff is a manufacturer of helicopters alleging in the instant action that it maintains intellectual property rights in the OEM drawings for MD 500 Series spare and replacement parts. (*See* ECF No. 1.)

Second, Defendant retained Gibson Dunn on February 11, 2002 to represent it in appealing the Default Notice to the Armed Services Board of Contract Appeals ("ASBCA").[1] (*Id.*) The "central issue" in the appeal turned on whether Defendant complied with the SOCOM contracts in its use of Plaintiff's drawings to manufacture spare parts for the MD 500 Series and the MELB. (*Id.* at 8.) On March 26, 2002, Gibson Dunn sent a letter to Army counsel about Defendant's use of OEM drawings to manufacture spare parts, the drafting of which entailed the communication of "extensive confidential information" by Defendant to its counsel, "including

---

[1]   Robert Metzger ("Metzger"), Tim Hatch, Bryan Arnold, and Sam Newman ("Newman") were the attorneys at Gibson Dunn who represented Defendant in this matter. (*Id.* at 8 (citing 177-2 at ¶ 2).) Of note, Robert Metzger "is currently a shareholder at Rogers Joseph O'Donnell and lead counsel for [Defendant] in this dispute." (*Id.*)

2

about how and from whom it acquired MD 500 data, including [Plaintiff] as a source." (*Id.*) The ASBCA denied the parties' cross-motions for partial summary judgment regarding the proper interpretation of the contractual requirement that all spare parts are required to be "FAA certified or Aircraft Manufacturer approved," but noted that Defendant had "approximately 3,000 [OEM] drawings for parts for the variants of the MD 500 Series from Government and commercial sources" used to manufacture spare parts under the SOCOM contracts. (*Id.* at 8–9.) Plaintiff was involved in the appeal, as it "reviewed documents and parts to determine whether [a part made by Defendant is] in 'strict accordance' with [Plaintiff's] drawings and technical specifications." (*Id.* at 9.)

Third, the United States indicted Defendant and its then-owners Rex Kamphefner ("Kamphefner") and Guy Icenogle on fraud charges in May 2003, alleging they "sought to defraud the United States" by supplying "surplus and used parts to be used on military versions of the MD 500" that they "allegedly knew did not comply with contractual requirements." (*Id.*) Gibson Dunn attorneys, including Metzger and Newman, "were active" in Defendant's defense prior to trial, as Gibson Dunn "appeared on pleadings on [Defendant's] behalf." (*Id.*) Gibson Dunn "obtained highly confidential information from [Defendant] which contributed to the company's successful defense against the federal charges," such as "how, over a period of years, [Defendant] obtained thousands of OEM documents, including MD 500 drawings and data." (*Id.* at 9–10.)

Fourth, Gibson Dunn represented Defendant in its defense of a civil False Claims Act ("FCA") lawsuit initiated by Defendant's former employee, who alleged Defendant "falsely represented under government contracts that certain components were made by the original manufacturer." (*Id.* at 10.) Gibson Dunn "engaged in lengthy settlement negotiations" from October 2003 to January 2005 on Defendant's behalf and asserted Defendant "was permitted to build parts to OEM prints it had obtained." (*Id.*) Gibson Dunn relied upon privileged information from Defendant about "how and from whom [Defendant] obtained OEM data and why and in what way [Defendant] used OEM data to build MD 500 parts." (*Id.*)

///

3

In the instant action, Plaintiff alleges Defendant used its OEM drawings, in which it claims intellectual property rights, to compete in the civilian market for MD 500 Series spare and replacement parts.[2] (ECF No. 1 at ¶ 38.) Plaintiff's first discovery request served in February 2017 specifically sought "All DOCUMENTS relating to [ASBCA] Case No. 53688 including the declaration of [Kamphefner]." (ECF No. 177-1 at 11.) Defendant objected and Plaintiff moved to compel, arguing the "documents are relevant to determine whether [Defendant] lawfully acquired [Plaintiff's] OEM drawings." (*Id.* (citing ECF No. 45 at 52).) The magistrate judge found Kamphefner's declaration relevant to Plaintiff's Complaint and ordered its production. (*Id.* (citing ECF No. 63 at 10).)

On February 13, 2019, Gibson Dunn identified Metzger as the attorney responsible for the firm's prior matters for Defendant and contacted Metzger to inform him Defendant's files were "eligible for destruction." (*Id.* at 12 (internal quotations omitted).) On July 8, 2019, Gibson Dunn filed to associate as co-counsel for Plaintiff in the instant action, and on July 11, 2019, Gibson Dunn filed the opposition to Defendant's Motion for Leave to File an Amended Answer. (*Id.* (citing ECF No. 169).) Gibson Dunn noted in this brief that "'this is not the first case in which [Defendant] and Kamphefner have been suspected of fraud,' citing the prior criminal and civil fraud actions where Gibson [Dunn] had represented [Defendant]." (*Id.*)

On July 12, 2019, Defendant's counsel emailed Gibson Dunn regarding "a serious issue of an apparent conflict of interest" from the firm's prior representation of Defendant, to which Benjamin Wagner ("Wagner") emailed back in disagreement that there was any conflict as the matters were "unrelated." (*Id.* at 13 (internal quotations omitted).) Wagner stated he had not realized Gibson Dunn was involved in the prior matters and informed Defendant that Gibson Dunn "had implemented an ethical wall since receiving [Defendant's] objection." (*Id.*)

///

///

---

[2] The Court need not recount all background facts of the instant case here, as they are set forth fully in the Court's November 30, 2018 Order denying Defendant's Motion to Dismiss and Special Motion to Strike. (ECF No. 95.)

4

On July 18, 2019, Defendant's counsel sent a letter "setting forth the facts that create a substantial relationship to the prior matters, and objecting to the 'serious breach of Gibson Dunn's duty of loyalty to its former client.'" (*Id.*) Defendant's counsel also requested copies of any of Defendant's documents remaining at Gibson Dunn. (*Id.*) On July 23, 2019, Gibson Dunn filed an amended opposition to Defendant's Motion for Leave to File an Amended Answer that omitted "all references to the prior actions in which Gibson [Dunn] had defended the company." (*Id.*) Scott Edelman ("Edelman") subsequently responded to the July 18 letter stating that it was "an error" to reference the prior matters in which the firm had represented Defendant. (*Id.*) Edelman also informed Defendant's counsel that Gibson Dunn "had performed a conflict check" prior to representing Plaintiff, and none of the attorneys involved in the representation of Plaintiff in the instant case were familiar with the firm's prior representation of Defendant. (*Id.*)

On July 29, 2019, Gibson Dunn's assistant general counsel Richard Dudley ("Dudley") emailed Defendant's counsel to inform them the firm "had implemented an ethical wall on July 15, preventing any firm lawyers or staff who had worked on the prior matters from communicating with the firm lawyers working on [Plaintiff's] matter, and preventing those attorneys from accessing materials from the representation of [Defendant]." (*Id.* at 14.) Dudley sent a second email on August 9, 2019, stating Gibson Dunn "still had in its possession certain 'hard-copy working papers' and '[s]ome electronic work product . . . stored on the [f]irm's electronic document management system," but that the firm had not "searched the archives of attorney emails to see if any relate to these matters" because they were not available to attorneys representing Plaintiff and would be expensive to search. (*Id.*)

On August 12, 2019, Gibson Dunn served Defendant with extensive discovery requests concerning the "Halder letter," a document regarding which Defendant filed a Notice of Intent to Withdraw Evidence (*see* ECF No. 166) as the letter "was not authentic." (*Id.* at 12, 14.) One request "seeks all communications concerning any visit by Albert Halder to [Defendant]" — such a visit occurred while Gibson Dunn represented Defendant and Defendant "shared confidential and privileged information with its Gibson [Dunn] attorneys about the visit." (*Id.* at 14.)

///

In August 2019, Defendant's counsel received sixteen boxes of documents that Gibson Dunn "had created or acquired" during its prior representation of Defendant, as well as "certain electronic records . . . which included over 400 pages of invoices, . . . detailed descriptions of the work Gibson [Dunn] performed for [Defendant], and showed total fees and costs incurred of over $1.1 million." (*Id.*) In September 2019, Defendant's counsel reiterated its concern about the conflict of interest, notifying Gibson Dunn that "documents responsive to its recent discovery requests included privileged email communications" between Defendant and Gibson Dunn. (*Id.*) Gibson Dunn responded by stating that "the firm had not searched its archived emails," but that the emails were not available to any of the attorneys representing Plaintiff. (*Id.*)

## II.  STANDARD OF LAW

The Eastern District "has adopted the Rules of Professional Conduct of the State Bar of California, and any applicable state court decisions, as its own standards of professional conduct." *Lennar Mare Island, LLC v. Steadfast Insurance Co.*, 105 F. Supp. 3d 1100, 1007 (E.D. Cal. 2014) (citing E.D. Cal. L.R. 180(e)). Thus, all attorneys practicing before this Court are required to "become familiar with and comply with the standards of professional conduct required of members of the State Bar of California." L.R. 180(e). The Ninth Circuit has also confirmed state law applies in determining whether to disqualify counsel. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). A party may move for disqualification of counsel "[i]f an attorney or firm takes on a representation in violation of these rules." *Lennar Mare Island, LLC*, 105 F. Supp. 3d at 1107. "[T]he decision to disqualify counsel for conflict of interest is within the trial court's discretion." *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) (citing *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980)). The party seeking disqualification bears the burden of establishing by a preponderance of the evidence the existence of a disqualifying prior representation. *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 11-CV-01189-LHK, 2011 WL 4635176, at *3 (N.D. Cal. Oct. 5, 2011).

A trial court's decision on a motion for disqualification is reviewed for abuse of discretion. *People ex rel. Dept. of Corp. v. SpeeDee Oil Change Systems, Inc. (SpeeDee Oil)*, 20 Cal. 4th 1135, 1143 (1999). "The paramount concern must be to preserve public trust in the

scrupulous administration of justice and the integrity of the bar" and "[t]he important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.* at 1145. The decision to disqualify counsel for conflict of interest requires the careful balancing of a number of factors including "a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that 'tactical abuse underlies the disqualification motion.'" *Kelly v. Roker*, No. C 11-05822 JSW, 2012 WL 851558 at *2 (Mar. 13, 2012) (citing *SpeeDee Oil,* 20 Cal. 4th at 1145).

Disqualification is "warranted only after a clear showing of conflict." *Lennar Mare Island, LLC*, 105 F. Supp. 3d at 1007. It is "generally disfavored and should only be imposed when absolutely necessary." *Id.*; *Koloff v. Metropolitan Life Ins. Co.*, No. 1:13-cv-02060-LJO-JLT, 2014 WL 2590209, at *3 (E.D. Cal. Jun. 10, 2014) (internal quotations omitted).

### III. ANALYSIS

Defendant requests the Court disqualify Gibson Dunn for two reasons. First, Defendant argues Gibson Dunn's representation of Plaintiff violates California Rule of Professional Conduct ("Rule") 1.9, as Gibson Dunn's prior representation of Defendant is substantially related to the instant matter and Gibson Dunn acquired Defendant's confidential information during its representation of Defendant. (ECF No. 177-1 at 16–20.) Second, Defendant maintains the belated measures Gibson Dunn took after it learned of a possible conflict can neither cure the conflict nor avert disqualification. (*Id.* at 21–24.)

In opposition, Plaintiff asserts Defendant's invocation of Rule 1.9 is incorrect, as Rule 1.10(b) applies in the instant case and permits Gibson Dunn's representation of Plaintiff. (ECF No. 183 at 19–23.) Plaintiff further argues vicarious disqualification is not warranted because confidences have not been nor will be disclosed, and disqualifying Gibson Dunn would be inequitable and prejudicial.[3] (*Id.* at 23–25.) The Court will address each of Defendant's

---

[3] The Court does not address Plaintiff's argument regarding prejudice, as it finds there is a substantial relationship between Gibson Dunn's prior representation of Defendant and its current representation of Plaintiff that requires the firm's disqualification. As previously noted, this Court is charged with "preserv[ing] public trust in the scrupulous administration of justice and the integrity of the bar," which weighs heavily in this case. *SpeeDee Oil*, 20 Cal. 4th at 1145.

arguments in turn.

### A. Violation of the California Rules of Professional Conduct

Rule 1.9, which governs duties to former clients, provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R. Prof'l Conduct 1.9(a). Rule 1.10(b), which governs imputation of conflicts of interest, provides:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
> (2) any lawyer remaining in the firm has information protected by Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter.

Cal. R. Prof'l Conduct 1.10(b).

California courts have distinguished between successive and simultaneous representations in their application of Rule 1.9. *WhatsApp Inc. v. NSO Group Tech. Ltd.*, No. 19-cv-07123-PJH, 2020 WL 7133773, at *3 (N.D. Cal. Jun. 16, 2020) (citing *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 283–84 (1994)). If the potential conflict arises from successive representation of clients with adverse interests, client confidentiality is jeopardized. *Id.* (citing *Flatt*, 9 Cal. 4th at 283). "The test used for disqualification in those instances is whether there is a 'substantial relationship' between the subjects of the former and current representations." *Id.* (citing *Flatt*, 9 Cal. 4th at 283–84). When a "substantial relationship" exists, "actual possession of confidential information need not be proved in order to disqualify the former attorney." *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1991). "[A]ccess to confidential information by the attorney in the course of the first representation is presumed and disqualification of the attorney's representation of the second client is required." *WhatsApp Inc.*, 2020 WL 7133773, at *3 (citing *Flatt*, 9 Cal. 4th at 283; *SpeeDee Oil*, 20 Cal. 4th at 1139 ("When a conflict of interest requires an

attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm.")). Courts have articulated three guiding principles regarding successive representation of clients:

> First, if the nature of the representation is such that confidences could have been exchanged between the lawyer and the client, courts will conclusively presume they were exchanged, and disqualification will be required. Second, there is a limited exception to this conclusive presumption in the rare instance where the lawyer can show that there was no opportunity for confidential information to be divulged. Third, the limited exception is not available when the lawyer's former and current employment are on opposite sides of the very same matter or the current matter involves the work the lawyer performed for the former client.

*Davis v. EMI Grp. Ltd.*, No. 12-CV-1602 YGR, 2013 WL 75781, at *3 (N.D. Cal. Jan. 4, 2013) (citing *City National Bank v. Adams*, 96 Cal. App. 4th 315 (2002)) (emphasis omitted).

Here, the parties disagree over whether Rule 1.9 or Rule 1.10 is applicable to govern the possible conflict of interest arising from Gibson Dunn's representation of Plaintiff. However, like other courts, this Court declines to resolve whether Rule 1.9 or Rule 1.10 is applicable because both "require an analysis into whether the prior and current representations are substantially related." *WhatsApp Inc.*, 2020 WL 7133773, at *3. If they are substantially related, then Rule 1.10(b)'s exception as well as Rule 1.9(a)'s prohibition on successive representation both apply to disqualify Gibson Dunn. *Id.* If not, "then Rule 1.9's prohibition does not apply and there is no basis" for disqualification. *Id.* As such, the Court will turn to an examination into whether the two representations are substantially related, which will include whether Gibson Dunn retains material confidential information.

                *i.*     *Whether the Representations are "Substantially Related"*

Evaluation of the substantial relationship test "turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation[;] and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 709 (2003). The California Supreme Court emphasized the

9

significance of the second variable:

> To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. If the former representation involved such a direct relationship with the client, the former client need not prove that the attorney possesses actual confidential information. Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel.

*City & Cnty. of San Francisco v. Cobra Sols., Inc. (Cobra Sols.)*, 38 Cal. 4th 839, 847 (2006) (internal citations omitted); *see also Jessen*, 111 Cal. App. 4th at 709–10.

Applying the substantial relationship test, the Court will first address the relationship between Gibson Dunn and Defendant, then turn to the relationship between the legal problems involved in the former and current representations.

### *a) Relationship Between Gibson Dunn and Defendant*

Although not required, some courts analyze the relationship between an attorney and former client by reviewing "(1) the nature and extent of counsel's involvement; (2) the time counsel spent on the prior matter; (3) the type of work performed; and (4) the potential that counsel was exposed to formulations of policy or strategy." *H.F. Ahmanson & Co.*, 229 Cal. App. 3d at 1454–55.

Defendant anticipates Plaintiff's argument that most attorneys who worked on the prior matters have left the firm, but maintains this is irrelevant, as Gibson Dunn's "representation was extensive, involved numerous lawyers — including several who are still at the firm — and where the firm likely continues to possess [Defendant's] confidential information." (ECF No. 177-1 at 22.) Defendant cites a litany of case law in support of this proposition, which the Court agrees is relevant to the instant matter. (*Id.* (citing *Davis*, 2013 WL 75781; *Elan Transdermal Ltd. v. Cygnus Therapeutic Systems*, 809 F. Supp. 1383, 1390–91 (N.D. Cal. Nov. 17, 1992); *Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074 (C.D. Cal. Feb. 13, 2015)).)

Plaintiff indeed argues in opposition that almost all of the attorneys identified by Defendant have left Gibson Dunn and only three attorneys who worked on the prior matters remain — Michael Murphy ("Murphy"), Scott Kruse ("Kruse"), and Tim Hatch ("Hatch"). (ECF No. 183 at 20.) Kruse and Hatch have retired, and Murphy is a partner in Gibson Dunn's Washington, D.C. office practicing environmental law. (*Id.*) The total number of hours billed by these three attorneys to the prior matters are few — 2.75 hours for Murphy, 4.80 hours for Kruse, and 18.25 hours for Hatch. (*Id.* (citing ECF Nos. 190, 191, 192).) Regarding the prior matters, Hatch specifically writes in his declaration:

> I do not remember performing this work, having done any work for Aerometals at any time, or anything about the matter on which I billed time. Simply put, I have no memory of Aerometals or MD Helicopters. I do, however, have a general recollection that Mr. Metzger would occasionally ask me for general advice on discrete matters because of my experience with government contracts work . . . Before submitting this declaration, I searched my active and accessible emails and ran a Google search for [Defendant]. Neither of these searches refreshed my recollection of having done any work for [Defendant]. Nor was I able to find any emails, folders, or other documents related to [Defendant] in my active emails account . . . While I cannot recall discussing [Defendant] or [Plaintiff] with anyone at Gibson Dunn at any time, I can say with certainty that I have not spoken to anyone at the [f]irm about [Defendant] or [Plaintiff] in the past year (or beyond), aside from my work in preparing this declaration. Indeed, in the past year, I have not spoken with any of the attorneys representing [Plaintiff] in the above-captioned matter about any subject.

(ECF No. 192 at 2–3.) Murphy and Kruse also state they "do not remember performing this work" or "having done any work for [Defendant] at any time." (ECF No. 190 at 2; ECF No. 191 at 2.) Plaintiff maintains neither Murphy, Kruse, nor Hatch have "confidential or privileged information" from the prior matters, as they "do not even recall the client or the work that they did over 15 years ago" and "have no files from those matters." (ECF No. 183 at 20 (citing ECF Nos. 190, 191, 192).) Indeed, the declarations for these attorneys all state that they do not remember the work performed for Defendant. (ECF No. 190 at 2; ECF No. 191 at 2–3; ECF No. 192 at 2–3.)

///

///

11

In its reply, Defendant concedes "most of the individual lawyers who worked on the matters have apparently left the firm," but argues Hatch, Murphy, and Kruse's declarations "are more nuanced" than how Plaintiff portrays them in its opposition. (ECF No. 199 at 7–8.) Murphy does not explicitly state he has no documents or emails related to Defendant and "merely states that he has not spoken to anyone regarding [Defendant] or [Plaintiff] in the past year." (*Id.* (citing ECF Nos. 190, 191, 192).) Defendant notes neither Hatch, Murphy, nor Kruse categorically state "that they do not have or at least do not recall any confidential or privileged information pertaining to [Defendant]." (*Id.*)

It is important to note that the fact Hatch, Murphy, and Kruse "billed only a short period of time does not preclude their work from being substantially related to the present litigation." *Elan Transdermal Ltd.*, 809 F. Supp. at 1388 (citing *Novo Terapeutisk Lab. A/S v. Baxter Travenol Lab.*, 607 F.2d 186 (7th Cir. 1979) (2.25 hours of work sufficient to disqualify former counsel)). Additionally, courts have found that "whether the attorneys actually possessed or conveyed confidential information is not the [substantial relationship] test." *Western Sugar Coop.*, 98 F. Supp. at 1088 (disqualifying plaintiff's counsel's firm for its previous representation of defendants "in matters substantially related to the present action," despite declarations from attorneys that they never received any information from other attorneys about defendants and they had not performed work on any matter for defendants after the firm's merger). Courts have also held that even where the staff remaining at a firm worked only on "unrelated matters" or "corporate tasks" for a former client, the lead counsel for the new client's assurances that "he and the 58 other [firm] employees with whom he conferred 'never received any confidential information'" about the former client was insufficient "to overcome the presumption that attorneys in the same firm share a 'close, fluid and continuing relationship, with its attending exchanges of information, advice, and opinions' that create ample opportunity for imparting confidential information and impressions from one to another." *Davis*, 2013 WL 75781, at *4 (citing *SpeeDee Oil*, 20 Cal. 4th at 1154).

///

///

Defendant continues to emphasize Gibson Dunn's retention of files with confidential information related to the previous matters creates a "substantial relationship." (S*ee generally* ECF Nos. 177-1, 199.) Courts have disqualified counsel where a firm retained "several boxes worth of [the former client's] files in storage per their own document custodian" or where there was "a 'reasonable possibility' that [the lawyer] acquired confidential information regarding [the former client's] business and marketing practices, its litigation and settlement strategies . . . [that if] imparted to [p]laintiff, would confer a significant advantage to [p]laintiff in this lawsuit." *Davis*, 2013 WL 75781, at *4; *Beltran v. Avon Products, Inc.*, 867 F. Supp. 2d 1068, 1082 (C.D. Cal. 2012). The Court agrees with Defendant that "[i]t is at least likely that Gibson [Dunn] continues to possess [confidential] information." (ECF No. 177-1 at 20.) Dudley emailed Merri Baldwin ("Baldwin"), a counsel for Defendant, noting Gibson Dunn still had "certain hard-copy working papers and [s]ome electronic work product," as well as "administrative files." (*Id.*; ECF No. 177-6 at 3 (internal citations omitted).) Dudley's email to Baldwin noted staff at Gibson Dunn "'obviously have not searched archives of attorney emails to see if any relate to these matters,' on the grounds that these are not available to any attorneys representing [Plaintiff] and would be expensive to search." (ECF No. 177-6 at 3 (citing ECF No. 177-12).) Dudley's declaration notes these files have "not been accessed by any attorneys or [f]irm personnel representing [Plaintiff]" and they have "been stored in off-site locations (i.e., not in any Gibson Dunn office)." (ECF No. 183 at 11 (citing ECF No. 194 at 4–6).) However, whether the email archives have been searched or whether the files have been accessed is irrelevant, as Gibson Dunn clearly still possesses confidential and possibly privileged information from its prior representation of Defendant.

Based on the foregoing, the Court finds the "nature of the representation" between Defendant and Gibson Dunn "is such that confidences could have been exchanged between the lawyer and the client," and therefore the Court "will conclusively presume they were exchanged." *Davis*, 2013 WL 75781, at *3. This presumption may be rebutted. *Elan*, 809 F. Supp. at 1389 (citing *Merle Norman Cosmetics, Inc. v. United States District Ct.*, 856 F.2d 98, 101 (9th Cir. 1988)). This presumption of a substantial relationship is rebutted by the declarations of Hatch,

Murphy, and Kruse that they received no confidential or privileged information. However, "to allow this presumption to be rebutted by declarations by self-interested parties" would be improper. *Elan*, 809 F. Supp. at 1390. The Court therefore finds it is possible the attorneys remaining at Gibson Dunn had a "direct professional relationship" with Defendant such that they "personally provided legal advice and services on a legal issue that is closely related to" the instant case. *See Cobra Sols.*, 38 Cal. 4th at 847.

> *b) Relationship Between the Legal Problems Involved in Defendant's Former and Current Representations*

The *Jessen* court provided that successive representations are substantially related when "the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen*, 111 Cal. App. 4th at 713; *see also Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co., Inc.*, No. F 04-5810 AWI LJO, 2005 WL 2319186, at *5 (E.D. Cal. Sept. 22, 2005) (evaluation of relationship must be "wide ranging and flexible"). "Material" means "the information acquired during the first representation . . . must be found to be directly at issue in, or have some critical importance to, the second representation." *Fremont Indem. Co. v. Fremont Gen. Corp. (Fremont)*, 143 Cal. App. 4th 50, 69 (2006) (citations omitted).

Defendant makes two main arguments here. First, "there is substantive overlap in the factual and legal issues involved in the prior matters handled by Gibson [Dunn] and the present matter," as Plaintiff's current lawsuit turns on whether Defendant infringed its copyrights "by improperly using OEM drawings and [Plaintiff's] technical manuals." (ECF No. 177-1 at 18.) Defendant notes the issue of Defendant's "possession and use of [Plaintiff's] OEM drawings was a central issue in the ASBCA case and figured also in the federal criminal case and the civil FCA cases," and Gibson Dunn obtained "significant confidential information about the OEM drawings then in [Defendant's] possession and how those materials were acquired and used." (*Id.*) Second, the close connection between Gibson Dunn's prior representation of Defendant and its

current representation of Plaintiff is apparent from the discovery the firm seeks, as "the firm's requests . . . seek at least one category of documents that include privileged communications between its former client, [Defendant], and itself." (*Id.* at 19.) Defendant notes that Gibson Dunn may still have those privileged emails its archives, which "is plainly troubling and further supports disqualification." (*Id.*)

Plaintiff maintains there is no substantial relationship between the prior matters and the instant action because Defendant never filed a Notice of Related Case and Defendant refused to produce documents related to the prior matters, "claiming they were irrelevant and unrelated to the instant action." (ECF No. 183 at 20–21.) Plaintiff contends the prior matters turned on "whether [Defendant] breached its contracts with the Government, whether [Defendant] delivered new or used parts, or what 'Aircraft Manufacturer approved' means in the SOCOM contract," and none of those issues are relevant in the instant action. (*Id.* at 21.) Plaintiff insists the two representations "involve different claims, different legal theories, and different factual allegations," and there is no risk of Metzger inadvertently passing confidential information to anyone at Gibson Dunn because he no longer works at the firm and the firm is not seeking to depose him now. (*Id.* at 21–22.)

Defendant makes several persuasive arguments in reply. First, Defendant argues shared factual issues establish a substantial relationship, as both representations "center on [Defendant's] acquisition and use of MD 500 drawings, an issue Gibson [Dunn] raised with [Defendant] and advised the company on, and which is now central to both the claims and the defenses raised here." (ECF No. 199 at 3–4.) This relationship is demonstrated by Plaintiff's discovery requests seeking documents that include privileged emails between Defendant and Gibson Dunn. (*Id.* at 4.) Relatedly, the Court agrees with Defendant that Gibson Dunn impliedly concedes a substantial relationship between the prior matters and the instant action when it argued the Halder letter "appears to be *a troubling pattern of fraud and deceit* by [Defendant] and Kamphefner" in its first opposition to Defendant's Motion for Leave to Amend the Answer, despite its attempt to file an amended opposition omitting this reference. (*Id.* at 4 fn.1; ECF No. 169 at 8 (emphasis added); *see also* ECF No. 172.)

15

1  Second, Defendant contends its discovery of additional facts (which include Gibson
2  Dunn's delivery "of dozens of boxes" to Defendant's counsel), along with Plaintiff's proposed
3  amended claims, has changed the relevance of the ASBCA case. (ECF No. 199 at 5.) Defendant
4  notes Plaintiff initially argued the ASBCA matter was related, as it requested "All DOCUMENTS
5  relating to [ASBCA] Case No. 53688" in February 2017. (*Id.*) Defendants objected to the
6  Plaintiff's motion to compel production of these documents at the time as overbroad, but
7  discovery it has obtained from Plaintiff since such time has shown Plaintiff's involvement "in the
8  initiation of the ASBCA matter, information that was not available to [Defendant] at the time it
9  opposed [Plaintiff's] discovery motion." (*Id.*) Specifically, the new information supports
10 Defendant's defense that Plaintiff "has known of [its] possession and use of the MD 500 drawings
11 for some time, yet long failed to bring any action against the company." (*Id.*) The fact that
12 Plaintiff has further sought to expand the claims in the instant action to add claims of
13 misappropriation of trade secrets and a violation of the RICO Act "will also involve factual issues
14 of how [Defendant] obtained [Plaintiff's] drawings and how the company used those drawings,
15 information obtained by Gibson [Dunn] in the context of its representation of [Defendant] in the
16 prior matters." (*Id.* at 6 (citing ECF No. 177-2 at 3–5).)

Accordingly, the Court finds "the information acquired during the first representation . . . ha[s] some critical importance to[] the second representation." *Fremont*, 143 Cal. App. 4th at 69.

### B.  Adequacy of Gibson Dunn's Measures to Cure or Avert a Conflict

Defendant contends Gibson Dunn's "remedial acts" of "fil[ing] an amended opposition omitting offending references to [the] prior matters" and "establish[ing] an ethical wall" fail to cure the conflict of interest. (ECF No. 177-1 at 21.) Defendant maintains "the damage caused by [Gibson Dunn's] clear breach of loyalty was already done" when it filed an amended opposition, as it was "a public document castigating its former client about matters where Gibson [Dunn] represented the client." (*Id.*) Defendant finally notes Gibson Dunn's ethical wall is untimely because it was implemented after the firm filed its notice of association in the instant case and participated in Plaintiff's opposition to Defendant's Motion for Leave to File an Amended Answer (that cited the previous matters in which Gibson Dunn successfully defended Defendant).

(*Id.* at 23.)

Plaintiff maintains vicarious disqualification is a rebuttable presumption that "can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences." (ECF No. 183 at 23 (citing *In re Cnty. of Los Angeles*, 223 F.3d at 995–96).) Plaintiff notes its ethical screen between the attorneys who worked on the prior matters and the attorneys representing Plaintiff "effectively prevent[s] the sharing of confidences obtained from Gibson Dunn's prior representation of [Defendant] . . . making disqualification unnecessary." (ECF No. 183 at 24 (citing *Kirk*, 183 Cal. App. 4th at 800–01) (internal quotations omitted).) However, Defendant is correct that *Kirk* is distinguishable from the facts of the instant case. (ECF No. 177-1 at 21 n.9.) The *Kirk* court concluded that "when a tainted attorney moves from one private law firm to another, the law gives rise to a rebuttable presumption of imputed knowledge to the law firm, which may be rebutted by evidence of effective ethical screening." 183 Cal. App. 4th at 814. Here, Gibson Dunn directly represented Defendant and therefore *Kirk* does not apply. The *Kirk* court further acknowledged "the issue of whether attorney screening can overcome vicarious disqualification in the context of an attorney moving between private law firms is not clearly settled in California law." *Id.* at 805. *In re Cnty. of Los Angeles* is also distinguishable from the facts of the instant case, as it involved a motion to disqualify the law firm of a retired U.S. magistrate judge on the grounds that he "had access to confidential information" regarding defendants when he presided over settlement negotiations in an unrelated case involving those defendants. 223 F.3d at 992.

The California Supreme Court has not considered "whether an attorney can rebut a presumption of shared confidences, and avoid disqualification, by establishing that the firm imposed effective screening procedures." *SpeeDee Oil*, 20 Cal. 4th at 1151. The Court has stated, however, that:

> Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is presumed and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.

17

*Flatt*, 9 Cal. 4th at 283. A number of California courts have found vicarious disqualification of a firm to be required where a substantial relationship is proven, " even if the firm erects an ethical wall around the attorney who possesses the opponent's confidences." *SC Innovations, Inc. v. Uber Techs., Inc.*, No. 18-CV-07440-JCS, 2019 WL 1959493, at *5 (N.D. Cal. May 2, 2019) (citing *Pound v. DeMera Cameron*, 135 Cal. App. 4th 70 (2005); *Henriksen v. Great Am. Savings & Loan*, 11 Cal. App. 4th 109 (1992); *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C. 08-04909 SI, 2010 WL 1136478, at *7 (N.D. Cal. Mar. 20, 2010); *Meza v. H. Muehlstein & Co.*, 176 Cal. App. 4th 969, 978 (2009)). Accordingly, this Court too finds Gibson Dunn's ethical wall insufficient to prevent the firm from vicarious disqualification.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Disqualify Gibson, Dunn & Crutcher as Plaintiff's Counsel. (ECF No. 177.) Plaintiff is ordered to file a notice of substitution of counsel — or if such a substitution is not possible — file a status report not more than thirty (30) days from the date of electronic filing of this Order. [4]

IT IS SO ORDERED.

DATED: March 30, 2021

Troy L. Nunley
United States District Judge

---

[4] The parties are additionally reminded that any corporation or entity cannot represent itself *pro se* and must be represented by counsel pursuant to Local Rule 183(a).